J-S38017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRELL S. ALLEN | : | |
| | : | |
| Appellant | : | No. 454 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 7, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001883-2023

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.: **FILED NOVEMBER 21, 2025**

Appellant, Terrell S. Allen, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his open guilty plea to robbery.[1] We affirm.

In its opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

> On or about November 25, 2022, the Collegeville Police Department filed a criminal complaint charging Appellant with robbery, simple assault, retail theft and related charges. On or about March 14, 2003, Magisterial District Judge Cathleen Rebar held a preliminary hearing. All charges were held for court and bail was set. On May 23, 2023, Appellant waived his formal arraignment. On May 25, 2023, the Commonwealth filed bills of information charging Appellant with the following crimes: … robbery—fear of serious bodily injury; robbery—bodily injury; robbery—take property from other; simple assault—bodily injury; simple

---

[1] 18 Pa.C.S.A. § 3701.

assault—physical menace; retail theft; harassment; terroristic threats; theft by unlawful taking; and receiving stolen property.

On April 18, 2023, the Honorable Steven T. O'Neill held a hearing on Appellant's petition for *habeas corpus*, where Appellant argued that the Commonwealth had not set forth a *prima facie* case for robbery—fear of serious bodily injury[.] After the hearing, the court denied the motion for *habeas corpus*….

A jury trial was scheduled before the undersigned for April 9, 2024. Appellant failed to appear for his trial. The court issued a bench warrant. On May 6, 2024, Appellant appeared before the court and the bench warrant was revoked. The court denied bail and Appellant was remitted to the Montgomery County Correctional Facility. The court scheduled a jury trial for August 7, 2024.

On August 7, 2024, Appellant entered an open plea of guilty to robbery—take property from other, 18 Pa.C.S.A. § 3701(a)(1)(v) (F3). On the date of the plea, the Commonwealth *nolle prossed* counts 1 and 2 (F1 robbery and F2 robbery) and agreed the remaining counts would be *nolle prossed* at sentencing. At the guilty plea hearing, the Assistant District Attorney placed the sentencing guidelines on the record. Appellant reviewed a written guilty plea colloquy with his attorney. Appellant initialed each page and signed the last page. Appellant also engaged in an oral colloquy on the record with his attorney and the court.

As a factual basis for the plea, Appellant admitted that on November 28, 2022, in Collegeville, Montgomery County, he took thirty-six (36) phones from the AT&T store. In the course of committing that theft, he entered into the back room of the store which caused the clerk to fall to the ground. Appellant affirmed that knowing the trial rights he is giving up by entering the plea, it was his intent to go forward with the open guilty plea.

The court determined that Appellant knowingly, voluntarily and intelligently entered an open plea of guilty to robbery—taking property from another by force, a felony of the third degree, accepted the plea and the Commonwealth's motion

to *nolle prosse* counts 1 and 2. Sentencing was deferred pending a pre-sentence investigation and report ("PSI") and a PPI evaluation. Appellant was remanded to Montgomery County Corrections Facility without bail.

On November 7, 2024, after a sentencing hearing, the court imposed a sentence of imprisonment for not less [than] twenty-one (21) months nor more than seven (7) years at a state correctional institution, to date from November 7, 2024 and with credit for time served from November 29, 2022 to February 20, 2024 and May 2, 2024 through November 7, 2024. The court ordered Appellant to pay the costs of prosecution. This sentence is a mitigated sentence.

On November 15, 2024, Appellant filed a timely post sentence motion for reconsideration of sentence, asking the court to reconsider its sentencing decision and impose a maximum sentence lower than what was imposed. On January 9, 2025, the court denied Appellant's post sentence motion.

On February 5, 2025, Appellant filed a timely notice of appeal to the Superior Court of Pennsylvania, appealing the judgment of sentence entered on November 7, 2024, which became final on January 9, 2025 when the court denied his post sentence motion. On February 10, 2025, the court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which he did on February 28, 2025. …

(Trial Court Opinion, filed 4/8/25, at 1-4) (internal footnotes and record citations omitted).

Appellant raises one issue for our review:

Did the [trial] court err in accepting [Appellant's] guilty plea since the plea was not knowingly and voluntarily entered because [Appellant's] oral guilty plea colloquy failed to explain that a jury's verdict would need to be unanimous and failed to explain the right to confront and cross-examine witnesses at trial?

(Appellant's Brief at 3).

- 3 -

Appellant argues that his oral plea colloquy was defective. Specifically, Appellant asserts that the oral plea colloquy contained no discussion of Appellant's right to confront and cross-examine witnesses and no discussion that a jury's verdict would need to be unanimous. Appellant contends that the written plea colloquy he signed does not cure these defects. Appellant emphasizes that people often do not read or understand what they are signing in written plea colloquies. Appellant maintains the record does not demonstrate that Appellant was aware of the rights he was giving up by pleading guilty. Appellant concludes his guilty plea was invalid on these grounds, and this Court must grant relief. We disagree.

As a preliminary matter, we observe:

> "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1246 (Pa.Super. 2002) (finding that the appellant's issue challenging his guilty plea was waived since it was not raised at the sentence colloquy, at the sentencing hearing, or through a post-sentence motion). Moreover, "[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." *Commonwealth v. Kohan*, 825 A.2d 702, 706 (Pa.Super. 2003) (citations omitted).

*Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa.Super. 2003). *See also* Pa.R.Crim.P. 720(B)(1)(a)(i) (governing post-sentence motion to withdraw guilty plea).

Here, our review of the record reveals that Appellant did not challenge the entry of his guilty plea at the plea hearing or on the day of sentencing,

- 4 -

either before or after the imposition of sentence. Further, in his post-sentence motion, Appellant challenged only the discretionary aspects of his sentence. Appellant did not raise his claim on appeal seeking to withdraw his guilty plea until he filed his Rule 1925(b) statement. Therefore, Appellant has waived his sole issue due to his failure to properly preserve it in the trial court. **See id.**; **Watson, supra**.

Moreover, even if properly preserved, Appellant's issue would not merit relief. "[A] defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified." **Commonwealth v. Pantalion**, 957 A.2d 1267, 1271 (Pa.Super. 2008). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." **Id.** (quoting **Commonwealth v. Muhammad**, 794 A.2d 378, 383 (Pa.Super. 2002)).

Our Rules of Criminal Procedure mandate that pleas are taken in open court and the court must conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. **Commonwealth v. Hodges**, 789 A.2d 764 (Pa.Super. 2002). Specifically, the court must affirmatively demonstrate a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the judge is not bound by the terms of any plea agreement unless the judge accepts the agreement. **See Watson, supra** at 796-97. **See also** Pa.R.Crim.P. 590,

*Comment*. Additionally, this Court may consider a written guilty plea as a supplement to an oral plea colloquy when evaluating the voluntariness of the plea. **See Commonwealth v. Bedell**, 954 A.2d 1209 (Pa.Super. 2008), *appeal denied*, 600 Pa. 742, 964 A.2d 893 (2009).

This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. **Muhammad, supra**. A guilty plea will be deemed valid if an examination of the totality of the circumstances surrounding the plea shows that the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. **Commonwealth v. Rush**, 909 A.2d 805 (Pa.Super. 2006).

Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing and bears the burden of proving otherwise. **Commonwealth v. Pollard**, 832 A.2d 517 (Pa.Super. 2003). A defendant who decides to plead guilty is bound by the statements he makes while under oath, "and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." **Id.** at 523. "Our law does not require that a defendant be totally pleased with the outcome of his decision to plead guilty, only that his decision be voluntary, knowing and intelligent." **Id.** at 524.

Instantly, the trial court explained:

> Appellant completed a written colloquy in connection with

his guilty plea, which the court reviewed and admitted into evidence. (N.T. Guilty Plea 8/7/24, at 6-7, 9, Exhibit D-1). Appellant initialed each page and signed the last page of the written colloquy with his attorney.

Appellant acknowledged in the written guilty plea colloquy that he had sufficient time to talk with his attorney and that his attorney told him what the words in the colloquy mean. (Guilty Plea Colloquy, questions 33 and 34). Appellant affirmed that no one forced him or coerced him to enter into this plea, and that he was pleading guilty on his own free will. (Written Guilty Plea Colloquy, questions 28-31, 38, 39; N.T. Guilty Plea 8/7/24, at 7).

Appellant indicated in the written colloquy that he understood that by pleading guilty he was giving up his right to a jury trial, which includes the right to take part in jury selection, that the jury's verdict would have to be unanimous, and that the jury must agree on his guilt beyond a reasonable doubt before he can be convicted. Appellant understood that it is the Commonwealth's burden to prove his guilt beyond a reasonable doubt. Appellant understood that he does not have to prove his innocence, he is presumed innocent, and he has the right to remain silent at trial. (Written Guilty Plea Colloquy, questions 16-21).

Appellant participated [in] an oral colloquy under oath. Trial counsel and the court conducted an oral colloquy of Appellant to establish that he understood the trial rights he was relinquishing by entering a plea of guilty. Appellant stated that if he were asked the questions contained in the written colloquy under oath on the record the answers would remain the same and would be truthful. (N.T. Guilty Plea 8/7/24, at 7.) Appellant affirmed that he understood the trial rights he was giving up. *Id.* at 8. Appellant affirmed that he understood that he had an absolute right to a jury trial, that he had enough time to talk with his attorney and did not have any questions. *Id.* at 9, 11.

Appellant testified he understood he was entering an open plea of guilty and giving up his right to a jury trial. *Id.* at 5-6. Appellant understood the rights he was giving up by proceeding with an open guilty plea. *Id.* at 6, 8. Appellant understood the nature of the charge to which he was

pleading guilty. *Id.* at 9. Appellant understood there was no agreement as to his sentence. *Id.* at 10. Appellant indicated he answered the questions contained in the written colloquy truthfully and his answers would be the same under oath. *Id.* at 7. Appellant stated he had enough time to discuss his options with his attorney and was satisfied with his attorney's representation. *Id.* at 6-7.

During the oral colloquy of Appellant, trial counsel asked Appellant the following questions related to his understanding of his right to a jury trial:

Q. Do you understand that ... today you're here to enter into an open guilty plea to Count 3 which is a felony, robbery, of the third degree?

A. Yes.

Q. And you and I discussed all of your options prior to today as far as going to trial, right?

A. Yes.

Q. And you decided that you wish to enter into this guilty plea today, right?

A. Yes.

Q. You understand in this case you would have right to a trial by jury, right?

A. Yes.

Q. And that would mean we would pick 12 jurors from the citizens of Montgomery County and they would sit and hear the case, right?

A. Yes.

Q. And it would be the Commonwealth's burden of proving your guilty beyond a reasonable doubt?

A. Yes.

Q. You would have the absolute right to remain silent, neither the judge, nor the jury could hold that against you?

A. Yes.

(N.T. Guilty Plea 8/7/24, at 5-6).

The on-the-record colloquy addressed that the jury would be chosen from the citizens of Montgomery County; it did not explicitly address that the jury's verdict would only be accepted if it was unanimous, and that in a jury trial Appellant would have the right to confront and cross examine witnesses. Appellant's written colloquy addressed that the jury's verdict would have to be unanimous, but it does not explicitly address the right to confront and cross examine witnesses. However, the written colloquy addresses constitutional rights that a defendant relinquishes when pleading guilty and addresses the essential requirements of a jury trial. The essential requirements, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel. *See Commonwealth v. Mallory*, 941 A.2d 686, 696-97 (Pa. 2008).

Appellant testified that he read through all the questions on the written colloquy, answered all of them truthfully and that his answers would be the same under oath. [N.T. Guilty Plea at 7]. He testified that no one forced, threatened or coerced him to enter into pleading guilty. He stated that it is his intent to plead guilty knowing all the rights at trial that he is giving up. *Id.* at 8. He affirmed that he discussed his trial rights with his attorney and had sufficient time to talk to his attorney about the case. *Id.* at 8. Appellant testified that he is satisfied with his attorney's representation. *Id.* at 7.

Based on the totality of the circumstances, Appellant had a full understanding of the nature and consequences of his plea. Appellant understood that by pleading guilty he was giving up his right to a jury trial. Appellant understood the essential rights of a jury trial. Appellant was aware of his

rights and the rights he was giving up by proceeding with a guilty plea. The written colloquy addressed the points not addressed in the oral colloquy. Appellant asserted on the record that the answers he gave on the written colloquy were true and correct. Appellant asserted on the record that his answers in the written colloquy would be the same under oath. The fact that Appellant's oral colloquy did not explicitly explain that the jury's verdict would have to be unanimous and that he has a right to cross examine and confront witnesses does not invalidate his knowing, intelligent and voluntary guilty plea.

The trial court exercised proper discretion in accepting Appellant's open guilty plea as knowing, intelligent and voluntary.

(Trial Court Opinion at 5-9).

The record supports the court's analysis. The totality of the circumstances demonstrates that the oral and written plea colloquies advised Appellant of the rights he was relinquishing by pleading guilty, and that Appellant entered his plea knowingly, intelligently, and voluntarily. *See Bedell, supra*; *Muhammad, supra*. *See also Commonwealth v. Wright*, No. 2484 EDA 2023 (Pa.Super. filed Feb. 12, 2025) (unpublished memorandum),[2] *appeal denied*, No. 136 MAL 2025 (Pa. Aug. 26, 2025) (holding that appellant waived challenge to validity of guilty plea by failing to raise it after sentencing orally or in written post-sentence motion; moreover, claim lacked merit in any event; regarding alleged defect in plea colloquy for failing to explain appellant's right to confront and cross-examine witnesses,

_____

[2] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

law does not explicitly require that court review this right with defendant who is entering guilty plea; notably, right to confront and cross-examine witnesses is not discrete topic appearing on list in Comment to Rule 590). Therefore, even if Appellant had preserved his appellate issue, it would merit no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/21/2025